UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| BRIAN HARGISS | CIVIL ACTION NO._____ |
| VS. | JUDGE _____ |
| LASALLE CORRECTIONS LLC, ET AL. | MAGISTRATE JUDGE |

## COMPLAINT FOR DAMAGES

Brian Hargiss, who is domiciled in the State of Arkansas, complains of the defendants as follows:

1. The defendants thus far identified are LaSalle Corrections LLC, a Louisiana limited liability company domiciled in Lincoln Parish, Louisiana, Gary Gilley, in his official capacity as Sheriff of Richland Parish, Louisiana, Roger Colvin, Caleb R. Smith, and Jacob Mooney, deputies of the Richland Parish Sheriff and five as yet unidentified individuals who were employees or detainees at the Richland Parish Detention Center.

2. This court has jurisdiction as provided by 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §1983; and the Fourth and Fourteenth Amendments of the U. S. Constitution. Venue is proper in accordance with 28 U.S.C. §1391(b), and it has jurisdiction under 28 U.S.C. §1367 to hear and determine plaintiff's state law claims.

3. On November 26, 2017, plaintiff and his elderly father were visiting plaintiff's close friend, Kelly Kervin, in Richland Parish, Louisiana. Plaintiff was one of his father's primary care takers.

4. After a particularly frustrating experience attempting to get his father dressed, plaintiff went outside to refresh his mind. Plaintiff is a runner, and he intended to run, but decided to just relax temporarily instead.

5. Plaintiff returned inside Ms. Kervin's house, and shortly thereafter, a Richland Parish sheriff's car arrived.

6. A booking report identified three deputies in the Richland Parish Sheriff's Department, Robert Colvin, Caleb R. Smith, and Jacob Mooney.

7. One of the deputies entered the front of the house, and another entered the rear of the house.

8. One or more or the deputies decided to call paramedics to attend to plaintiff's father, Billy Hargiss.

9. Plaintiff explained that he had recently taken his father to St. Francis Medical Center and that he planned to take him to the Veteran's Hospital in Fayetteville, Arkansas, Mr. Hargiss' preferred treatment center. Plaintiff also explained that he had a medical power of attorney.

10. The deputies apparently resented plaintiff's assertion of authority over the person of his father. They called paramedics to the scene despite plaintiff's instructions.

11. As plaintiff argued with the deputies over the unauthorized treatment of his father, one of the deputies thought to be Jacob Mooney suddenly grabbed plaintiff from behind, handcuffed him, and threw him against the table.

12. The deputies did not say why they had begun manhandling plaintiff. They did not say that plaintiff was under arrest, they just took him outside and knocked his head against the cruiser while putting him in the back seat for transportation to jail.

13. The deputies drove straight to the Richland Parish Detention Center. Two of the deputies pulled plaintiff out of the car still handcuffed.

14. Plaintiff was taken to a room where there were five men. He suspects that three of the men were detainees or prisoners and that two of the men were employees of LaSalle Corrections LLC.

15. The deputies then left with an apparent understanding that plaintiff would be treated harshly.

16. Plaintiff believes that the three white men were prisoners or detainees and the two black men were employees. One of the employees asked why plaintiff was there. Plaintiff said he guessed it was because he wanted to take his father to the V.A. hospital.

17. While he was talking, plaintiff wiped some blood from his face with his left hand, at which point one of the white men said, "That ain't nothing compared to what we're going to do to you."

17. One of the black men believed to be an employee of the detention center instructed plaintiff to lie down on a mat. In retrospect, plaintiff believes that was to avoid video of his impending beating.

18. Plaintiff's head was very close to the base of the metal bench. The man who instructed him to lie down lay down in front of him with his face directly in front of plaintiff's. Plaintiff feared that he was about to be sexually assaulted.

19. One of the white men began kicking plaintiff. While he was being kicked, the black man on the floor beside plaintiff slugged him in the face viciously knocking his head against the metal base of the bench resulting in a concussion and fracture of plaintiff's zygomatic arch.

20. After plaintiff was beaten and kicked on the floor, the other black man thought to be an employee of the detention center took the handcuffs off of plaintiff and yanked him up. Plaintiff was then stripped and dragged into the shower. Plaintiff heard someone say, "He fell, got it." That statement was repeated by several of the people.

21. Plaintiff was stripped naked and strapped to a chair with plastic ties that cut his flesh. He was then shoved under the shower after which a cold bucket of water was poured on him.

22. Plaintiff was left naked and strapped in the chair with the air conditioner on in November.

23. Plaintiff was left like that for hours in which time he went in and out of shock, cried and prayed.

24. After about three and one-half hours the bands were cut and someone threw a filthy garment to plaintiff. Someone put some food on the floor, and plaintiff discovered that he could not open his mouth.

25. When plaintiff told the large black man that he wanted to make his phone call, the employee said, "Shut up. No one can hear you; no one cares."

26. The next morning someone who appeared to be an officer, young, cocky, short hair, mustache, and glasses, asked plaintiff what happened to him. Plaintiff described his savage mistreatment.

27. Despite his obvious injuries, plaintiff was given no medical treatment other than a band-aid.

28. Eventually, plaintiff's brother arrived from Arkansas and posted bond for plaintiff's release.

29. Dennis Hargiss asked what happened, and the unidentified officer said that plaintiff had a fall. At this point Dennis Hargiss said that did not happen in a fall. The young man replied "I have to protect me and mine."

30. As plaintiff and his brother were leaving the young officer leaned over and said "If I were you, I'd be happy to be walking out of here alive."

31. The news report relating to this savage mistreatment of the plaintiff indicated that someone was fired as a result of this misconduct, but that person remains unidentified. The sheriff's office refused, in violation of La. 44:1 et seq., to provide public records requested by plaintiff's counsel.

32. Plaintiff suffered permanent injuries as a result of this savage beating that was sustained on November 26 and 27, 2017. The outrageous conduct of the deputies that seized plaintiff and the employees and agents of the detention center make it clear that these people have not been properly trained.

33. The sheriff and the corrections facility have the duty to prevent their employees from illegally arresting and brutalizing citizens in violation of 18 U.S.C. § 242.

34. Plaintiff was seized by Richland Parish deputies in violation of his Fourth Amendment rights.

35. The conduct of the deputies, employees, and detainees at the correctional facility violated plaintiff's rights under the Fourteenth Amendment and 42 U.S.C. §1983.

36. In addition to the constitution and statutory violations, defendants are liable under basic tort law and respondeat superior.

**WHEREFORE, PLAINTIFF PRAYS** that there be judgment herein in his favor and against the defendants for such compensatory and punitive damages to which he proves himself justly entitled, reasonable attorney's fees, and all costs of this proceeding.

**PLAINTIFF FURTHER PRAYS** for trial by jury.

Respectfully submitted,

_____
James A. Rountree, 11491
Rountree Law Offices
400 Hudson Lane
Monroe, Louisiana 71201
Telephone: (318) 398-2737
Facsimile: (318) 398-2738

Lavalle B. Saloman, 8599
Law Offices of Lavalle B. Saloman
P. O. Box 14596
Monroe, Louisiana 71207
Telephone: (318) 387-1222
Facsimile: (318) 387-1273