**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **BRIAN PATRICK HARGISS** | ) | **CIVIL ACTION NO. 3:18-CV-01466** |
| | ) | |
| **VERSUS** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **LASALLE CORRECTIONS, ET AL.** | ) | **MAG. JUDGE KAYLA D. MCCLUSKY** |

---

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................... ii

**I. PROCEDRUAL BACKGROUND** ........................................................1

   **a. The jury erred when rendering its verdict in several respects** .......................2

**II. LAW AND ANALYSIS** ...................................................................3

   **a. Applicable standard regarding new trials** ...........................................3

   **b. The jury's verdict is contrary to the law and evidence** ...................................5

      **i. The necessary standard for a finding of bystander liability was not met** ...............5

      **ii. Defendants were entitled to a finding of qualified immunity under the facts of this case.** ......................................................................10

      **iii. The jury improperly allocated a percentage of fault against Williams despite finding he had not violated Louisiana state law** ...........................................13

   **c. Alternatively, remittitur is appropriate in this matter** .................................14

      **i. Past physical and mental injuries for pain and suffering** ...........................15

      **ii. Future physical and mental injuries for pain and suffering** ...................19

      **iii. The jury's punitive damage award is excessive** .....................................20

**III. CONCLUSION** ..........................................................................24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **BRIAN PATRICK HARGISS** | ) | **CIVIL ACTION NO. 3:18-CV-01466** |
| | ) | |
| **VERSUS** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **LASALLE CORRECTIONS, ET AL.** | ) | **MAG. JUDGE KAYLA D. MCCLUSKY** |

---

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Creighton,*
   483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ............................................................ 11

*Brady v. Fort Bend County,*
   145 F.3d. 691 (5th Cir. 1998) ................................................................................................... 19

*Buchanan v. West Whitehead Tp.,*
   2009 WL 54949 (E.D.Pa. January 7, 2009) ........................................................................ 9, 10

*Burns-Toole v. Byrne,*
   11 F.3d 1270 (5th Cir. 1994) ................................................................................................... 12

*Capps v. Drake,*
   2016 WL 2627441 (S.D.Ill. 2016) ......................................................................................... 23

*Carey v. Phillips,*
   435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ............................................................ 19

*Cargo v. Dotson,*
   2014 WL 1095219 (N.D.Ill. 2014) ......................................................................................... 22

*Chiu v. Plano Independent School District,*
   260 F.3d 330 (5th Cir. 2001) ............................................................................................ 11, 12

*Constanten v. Day,*
   1997 WL 831042 (La Dist.Ct. 1997) ..................................................................................... 15

*Douglas v. DePhillips,*
   2017 WL 4574422 (E.D.La. October 13, 2017) ............................................................... 6, 7, 8

*Gatt v. Joseph*,
   2012 WL 12986644 (E.D.La. March 29, 2012) .......................................................... 4

*Gibson v. State Through Dept. of Transp. & Dev.*,
   95-1418 (La.App. 1 Cir. 4/4/96) ............................................................................. 13

*Gilbert v. French*,
   364 Fed.Appx. 76 (5th Cir.2010) .............................................................................. 6

*Gilles v. Gen. Elec. Co.*,
   245 F.3d 474 (5th Cir. 2001) ................................................................................. 19

*Gros v. Thobodaux*,
   2007 WL 5433893 (La Dist.Ct. 2007) ..................................................................... 15

*Hale v. Townley*,
   45 F.3d 914 (5th Cir. 1995) ................................................................................ 6, 8

*Harlow v. Fitzgerald*,
   457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ....................................... 10, 11

*Ibarra v. Harris Cnty. Tex.*,
   243 Fed.Appx. 830 (5th Cir.2007) ............................................................................ 6

*Laxton v. Gap, Inc.*,
   333 F.3d 572 (5th Cir. 2003) ................................................................................. 14

*Lewis v. Goodie*,
   798 F.Supp. 382 (W.D. La. 1992) ...................................................................... 21, 22

*Longoria v. Hunter Express, Ltd.*,
   932 F.3d 360 (5th Cir. 2019) ................................................................................. 14

*McDonald v. McClelland*,
   779 Fed.Appx. 222 (5th Cir. 2019) ........................................................................... 6

*Mitchell v. Lone Star Ammunition, Inc.*,
   913 F.2d 242 (5th Cir. 1990) ................................................................................... 4

*Pierce v. Taqi*,
   2017 WL 4049788 (E.D. NY 2017) .......................................................................... 22

*Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*,
   179 F.3d 169 (5th Cir. 1999) ................................................................................... 4

*Rankin v. Klevenhagen*,
   5 F.3d 103 (5th Cir. 1993) ............................................................................................... 11, 12

*Saldana v. Garza*,
   684 F.2d 1159 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983)............. 12

*Siegert v. Gilly*,
   500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)........................................................ 11

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ................................................................................................. 4

*Smith v. Wade*,
   461 U.S. 30, 503 S.Ct. 1625, 75 L.Ed.2d 632 (1983)............................................................. 20

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998) ................................................................................................. 6

*Spann v. Rainey*,
   987 F.2d 1110 (5th Cir. 1993) ............................................................................................... 12

*Stevenson v. City of Albuquerque*,
   446 F.Supp.3d 806 (D. New Mexico  February 21, 2020) ....................................................... 9

*Talbot v. Louisiana Superdome Facility*,
   1994 WL 881145 (La.Dist.Ct. 1994) ...................................................................................... 15

*Thomas v. Texas Dept. of Criminal Justice*,
   297 F.3d 361 (5th Cir. 2002) ................................................................................................. 19

*Thompson v. Upshur County, Texas*,
   245 F.3d 447 (5th Cir. 2001) ................................................................................................. 12

*Vogler v. Lackmore*,
   352 F.3d 150 (5th Cir. 2003) ................................................................................................. 14

*Washington v. Gray*,
   2011 WL 6002091 (4th JDC 2011) ........................................................................................ 16

*Wellborn v. Sears, Roebuck & Co.*,
   970 F.2d 1420 (5th Cir. 1992) ............................................................................................... 14

*Whitley v. Hanna*,
   726 F.3d 631 (5th Cir. 2013) ................................................................................................. 5

iv

**<u>Rules</u>**

Federal Rule of Civil Procedure 59 ............................................................................. 3, 14

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **BRIAN PATRICK HARGISS** | ) | **CIVIL ACTION NO. 3:18-CV-01466** |
| | ) | |
| **VERSUS** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **LASALLE CORRECTIONS, ET AL.** | ) | **MAG. JUDGE KAYLA D. MCCLUSKY** |

---

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR NEW TRIAL OR, ALTERNATIVELY, REMITTITUR**

**MAY IT PLEASE THE COURT:**

Now come Defendants, Gary Gilley, Sheriff of Richland Parish, Leighton Linder, and Darius Williams, who file the instant memorandum in support of their accompanying Motion for New Trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A) or, alternatively, Remittitur, which is urged pursuant to Federal Rule of Civil Procedure 59(e).

## I. PROCEDURAL BACKGROUND

These motions are the result of a jury trial which began on October 12, 2021 and concluded the following day, at which time the jury returned a verdict which found former Deputies Leighton Linder ("Linder") and Darius Williams ("Williams") directly liable to Plaintiff, Brian Hargiss ("Plaintiff"), pursuant to 42 U.S.C. § 1983 and Louisiana state law. Further, the jury found Sheriff Gary Gilley liable to Plaintiff under the Louisiana state law theory of vicarious liability. More specifically, the jury found that Defendants Linder and Williams were liable under the theory of bystander liability for excessive force against Hargiss as a result of the direct excessive force committed by Defendant, Travis Simmons ("Simmons").[1] Moreover, the jury found that

---

[1] Travis Simmons did not appear at the trial in this matter and remains unrepresented by counsel.

Defendants Simmons and Linder committed the intentional tort of battery against Plaintiff, but that Williams did not.

Despite the latter fact, the jury allocated fault as to Plaintiff's Louisiana state law claim of battery as follows:[2]

      a.  Travis Simmons:  50%

      b.  Leighton Linder:  25%

      c.  Darius Williams:  25%

The jury awarded compensatory damages totaling three hundred twenty-nine thousand, two hundred forty dollars and forty cents ($329,240.40.00) and punitive damages totaling one hundred thousand dollars ($100,000.00). Fifty thousand dollars ($50,000.00) was levied against Simmons for his direct use of excessive force, while twenty-five thousand dollars ($25,000.00) was levied against both Linder and Williams each for a failure to intervene in response to Simmons' sudden attack. On October 21, 2021, the Court entered Judgment in Plaintiff's favor.[3]

      a.    **<u>The jury erred when rendering its verdict in several respects.</u>**

It is undisputed that on November 26, 2017, Plaintiff was arrested for disturbing the peace while extremely intoxicated. He was subsequently incarcerated in Richland Parish Detention Center. It is also undisputed that during Plaintiff's period of incarceration, Simmons, in violation of the Richland Parish Sheriff's Office's code of conduct, suddenly struck Plaintiff on the face with a closed fist. Simmons was subsequently terminated from the Richland Parish Sheriff's Office and arrested by that same agency for his actions. Further, Linder can be seen on jailhouse video kicking at Plaintiff's hand; however, Plaintiff did not allege any injuries to his hand during the trial in this matter. Finally, the jury determined Williams did not make any offensive contact

---

[2] R. Doc. 192.
[3] R. Doc. 201.

with Plaintiff; however, despite that fact, he was assessed 25% under Louisiana's comparative fault doctrine.

Defendants submit that the jury verdict in this matter is colored by numerous misconceptions and misapplications of law.  This is most easily evidenced by the fact the jury apportioned fault to Williams despite a finding he had not violated Louisiana law.  Further, and as explained by counsel for Defendants during her closing argument, the law of 42 U.S.C. § 1983 is nuanced and not particularly easy for a layperson to grasp.  Defendants submit that the jury did not truly understand the concept of "bystander liability" vis-à-vis excessive force, and this fact is reflected in both excessively high general damages awarded to Plaintiff, in addition to the award of punitive damages as to Defendants.  No great effort need be made to explain how or why this happened.  The video which was presented to the jury and which shows Simmons striking Plaintiff served to inflame the jury's passion and prejudice the jury against Defendants herein, despite their lack of involvement in the sudden, single punch thrown by Simmons.  For all of the reasons submitted below, Defendants seek a new trial in this matter or, in the alternative, remittitur of the jury's award.

## II.  LAW AND ANALYSIS

### a.  <u>Applicable standard regarding new trials.</u>

Defendants seek a new trial pursuant to Federal Rule of Civil Procedure 59.  Rule 59(a) provides that a district court may grant a new trial "on all or some of the issues…after a jury trial, for any reason which a new trial has heretofore been granted in an action at law in federal court."  A new trial is available under the following circumstances: 1) the verdict is against the weight of the evidence; 2) the verdict is too large or too small; 3) new evidence is discovered; 4) counsel engaged in misconduct; 5) the court engaged in misconduct that affected the jury; 6) the jury

instructions, taken as a whole, give a misleading impression or inadequate understanding of the law; or 7) the jury made a prejudicial, substantial error in rejecting a jury instruction. *Gatt v. Joseph*, 2012 WL 12986644, *2 (E.D.La. March 29, 2012).

Most pertinent for the purposes of this Motion is the fact that Rule 59 empowers the Court to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). The authority of the trial court to grant a new trial on the basis of its belief the verdict is contrary to the weight of the evidence "has long been regarded as an integral part of trial by jury." *Id.* at 613-14. When making this determination, the trial court must weigh all of the evidence presented, but need not view the evidence in the light most favorable to the non-moving party. *Id*. at 613. "While to court is to respect the jury's collective wisdom and must not substitute its opinion for the jury's, '[i]f the trial judge is not satisfied with the verdict of the jury, he has the right—*and indeed the duty*—to set the verdict aside and order a new trial.'" *Id.* (emphasis added)(internal citations omitted).

The trial judge's decision to grant a new trial will be affirmed by the appellate court, even in those instances when the higher court would disagree with the ruling, as long as the appellate court "can perceive a sound basis for the trial judge's finding the verdict is against the great weight of the evidence. *Id.* Further, the Fifth Circuit has repeatedly held that "the decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or a misapprehension of the law." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985); *see also Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 252 (5th Cir. 1990).

**b.  <u>The jury's verdict is contrary to the law and evidence.</u>**

Plaintiff's argument, upon which the jury relied in imposing liability on Defendants Leighton Linder ("Linder") and Darius Williams ("Williams") pursuant to 42 U.S.C. § 1983, is startling in its lack of evidentiary support.  Plaintiffs asked the jury to find the aforementioned Defendants liable under a theory of bystander liability arising out of Simmons' independent use of excessive force.  As this Court will recall, Plaintiff was rapidly struck on the face a single time by Defendant Travis Simmons in the timespan of approximately one second.  Under Plaintiff's theory of the case, this single act somehow gave rise to bystander liability against Linder, who was not present in the prison hallway where the strike took place, and against Williams, who was standing *across from* Simmons at the time the punch was thrown.  Moreover, the video evidence shown to the jury demonstrates that Simmons did not attempt to strike Plaintiff again after the single punch.  Simply stated, Plaintiff failed to meet the evidentiary burden necessary to find either Linder or Williams liable under a theory of bystander liability, and the jury's verdict was against the weight of the evidence.  As such, a new trial in this matter is both warranted and necessary.

**i.  <u>The necessary standard for a finding of bystander liability was not met.</u>**

Per the United States Fifth Circuit Court of Appeal, an officer may be liable under a § 1983 theory of bystander liability where the officer: 1) knows that a fellow officer *is violating* an individual's constitutional rights; 2) has a reasonable opportunity to prevent the harm; and 3) chooses not to act.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal citations omitted)(emphasis added).   In analyzing a bystander liability claim, the Court must also consider whether an officer "acquiesce[d] in" the alleged constitutional violation."  *Whitley*, 726 F.3d at 647. However, liability will not attach when an officer is not present at the scene of the constitutional violation.  *Id.* at 646-47; citing *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th

Cir. 1998)(citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *see also Gilbert v. French*, 364 Fed.Appx. 76, 83 (5th Cir.2010) (per curiam) (unpublished); *Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830, 835 & n. 8 (5th Cir.2007) (per curiam) (unpublished) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force."). The Fifth Circuit has plainly stated that an officer who was not present at the scene of the constitutional violation cannot be found liable under a theory of bystander liability. (*See McDonald v. McClelland*, 779 Fed.Appx. 222, 227 (5th Cir. 2019)("Chief McClelland was not present [during the use of force], so he cannot be liable as a bystander.")

A review of caselaw out of the Fifth Circuit regarding bystander liability results in only one conclusion: a finding of bystander liability vis-à-vis use of excessive force is appropriate only in those instances in which *continuous physical harm* is being exerted against one who is in law enforcement's custody, and other law enforcement officers who are present and are not participating in the constitutionally violative act choose not to intervene.  Further, knowledge that the act is occurring and an opportunity to stop that act from occurring is tantamount to sustaining such a claim.  Under the facts of this case, we must look to caselaw which pertains to use of excessive force that was both sudden and brief for guidance.

In the matter of *Douglas v. DePhillips*, 2017 WL 4574422 (E.D.La. October 13, 2017), the court analyzed whether a plaintiff, who was suddenly shot and killed by a law enforcement officer at the end of a car chase through St. Tammany Parish, had a valid cause of action for a failure to intervene against other officers who were on the scene at the time the plaintiff was shot.  The pertinent facts are as follows: at approximately 5:00 p.m. on March 19, 2016, a National Crime Information Center Camera detected a license plate that had been reported stolen, and which was

attached to a silver, four door Infiniti Sedan.  *Id.* at *1.  The camera sent this information to the St. Tammany Parish Sheriff's Office, and officers were dispatched in response to the sighting.  *Id.* Deputy James Kelly responded to the dispatch, and sighted the sedan almost immediately.  *Id.*  The vehicle was driven by the plaintiff, and there was a female located in the front passenger seat.  *Id.* Deputy Kelly activated his cruiser's emergency lights and began to pursue the Infiniti due to the stolen plate.  *Id.*  The plaintiff refused to stop and pull over his vehicle.  *Id.*

A chase ensued and ended only when the plaintiff drove the car into a ditch.  *Id.* at *2.  At that time two other law enforcement officers, Deputies Matthew DePhillips and Jacob Jenkins, joined Deputy Kelly.  *Id.*  The three deputies left their vehicles, rushed towards the Infiniti with weapons drawn, and positioned themselves at various points around the vehicle.  *Id.*  The passenger placed her hands in the air.  *Id.*  The plaintiff then put his hands on the top of the passenger's arms, and positioned his face within inches of the female passenger's face.  *Id.*  Deputy DePhillips opened the Infinit's rear passenger door and immediately fired one shot into the vehicle, hitting the plaintiff near his right eye.  *Id.*  Deputy DePhillips claimed that he believed the plaintiff had a firearm; however, no firearm was recovered from the scene.  *Id.*

Paramedics arrived twelve to fourteen minutes later, at which time the plaintiff was pronounced dead on the scene.  *Id.* at *3.  As a result of the plaintiff's death, the decedent's father filed suit against the deputies alleging, among other things, bystander liability against Deputies Kelly and Jenkins arising out of Deputy DePhillips' alleged use of excessive force.  *Id.* at *11. The court held as follows:

> "Even assuming that Deputy DePhillips's use of deadly force against [the decedent] amounted to constitutionally excessive force, the factual allegations illustrate that Deputies Kelly and Jenkins still cannot be held liable for this use of force under a bystander theory of liability.  According to the complaint, 'mere seconds' passed between the time that Deputy DePhillips exited his cruiser and the

7

> time that he discharged his firearm at [the decedent]. The complaint further alleges that Deputy DePhillips 'immediately fired' his weapon '[u]pon reaching and opening the rear passenger door.'
>
> *Given the alleged speed with which the incident unfolded,* the factual allegations cannot be reasonably construed to support the inference that Deputies Kelly and Jenkins 'acquiesced in the alleged use of excessive force.'" (*Hale, supra.*).

*Douglas* at *11.(emphasis added)

Similarly here, the video evidence introduced during the trial by Plaintiff shows that the offensive contact between Plaintiff and Simmons occurred within a split second. There is no *reliable* evidence whatsoever to show that either Lindon or Williams knew that Simmons was going to strike Plaintiff at or immediately before the incident occurred. Only unsupported conspiracy theories were asserted by Plaintiff. In fact, Lindon was not even near Simmons nor Plaintiff at the time the punch was thrown. Close proximity is a requirement of sustaining a claim of bystander liability. Although Plaintiff created a narrative in which Simmons gave a thumbs up symbol to Lindon shortly prior to the event, nobody has testified with any degree of credible knowledge that there was any collusion between Simmons and Linder. Linder denied Plaintiff's speculative claims while on the stand and Plaintiff provided no evidence whatsoever to support his claims or refute that testimony.

Moreover, the single punch was thrown so quickly there is no way at all Williams could have prevented it from happening. Had Simmons repeatedly punched Plaintiff in the presence of an unresponsive Williams, Plaintiff might be able to support a claim for bystander liability. However, these are not the facts of this matter. Simply stated, Plaintiff has failed to assert a valid claim of bystander liability for all of the reasons listed above and, as such, the jury erred in finding both Linder and Williams liable pursuant to 42 U.S.C. § 1983.

In the matter of *Stevenson v. City of Albuquerque,* 446 F.Supp.3d 806 (D. New Mexico February 21, 2020), the court addressed a factual pattern that, while not identical to the facts herein, is remarkably similar.   In *Stevenson,* a gentleman named Majestic Howard sued three law enforcement officers under a "failure-to-intervene" theory as to a fourth's officer use of force against the plaintiff.   More specifically, Officer Ben Daffron ("Daffron") struck the plaintiff's shoulder with three knee strikes over a four-second period in an effort to secure the plaintiff's hand while in the presence of the officers.  *Id.* at 823-24. Soon after, Officer Jonathan Franco ("Franco") delivered a single knee strike to the plaintiff's head while the aforementioned three officers were attempting to secure the plaintiff's right hand.  *Id.* at 825.   It was uncontested that the other two officers on the scene, Joshua Chafin ("Chafin") and Sonny Molina ("Molina") did not strike the plaintiff.  *Id.* at 826.  Due to the physical contact, the plaintiff filed suit against all four officers pursuant to § 1983 alleging, among other things, that Chafin and Molina failed to intervene and stop Daffron's and Franco's alleged use of excessive force.  *Id.* at 828.

Chafin and Molina moved for a finding of qualified immunity, arguing that even if it were determined Daffron and Franco had used excessive force, they did not have an opportunity to intervene given the rapid unfolding of the events.  *Id.*   In reviewing this defense, the court sided with Chafin and Franco.  Noting that Daffron issued his strikes in less than four seconds, the court determined that neither Chafin nor Franco had the necessary time to intervene on behalf of the plaintiff.  *Id.* at 873.  Further noting that the entire encounter with the plaintiff lasted ten seconds, the court determined that "no reasonable jury could conclude that Chafin and Molina had a realistic opportunity to intervene."  *Id.*

Similarly, in the matter of *Buchanan v. West Whitehead Tp.*, 2009 WL 54949 * 4 (E.D. Pa. January 7, 2009), Officer Brian Greisser decided to utilize his taser on an individual who led law

enforcement on a 3.3 mile chase *after* she had brought her vehicle to a stop, and while in the presence of two other officers. Much like Officers Chafin and Molina in the *Stevenson* matter, *supra.*, neither of the accompanying officers utilized any force against the plaintiff. *Buchannan,* at 3. Noting that failure to intervene during an "ongoing attack" is required for a finding of bystander liability and the act of excessive force giving rise to plaintiff's claim occurred in a matter of seconds, the court noted that "the events took place so quickly that there was no reasonable or realistic possibility for either [officer] to intervene to prevent [the excessive force from occurring]." *Id.* at 4.

As previously stated, the offensive encounter between Simmons and Plaintiff lasted approximately one second. Linder was not present when Simmons' punch was thrown, nor did Williams have the remotest of opportunities to stop an action he testified he did not know what going to occur. Considering these facts, the jury's finding of a Section 1983 violation for a failure to intervene against Defendants herein is clearly erroneous, given the elements necessary to arrive at such a finding and the evidence presented.

ii.     **Defendants were entitled to a finding of qualified immunity under the facts of this case.**

Both before and during the trial in this matter, Defendants asserted the affirmative defense of qualified immunity. Under the § 1983 doctrine of qualified immunity, public officials enjoy immunity from civil damages for their discretionary acts so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "To determine whether a right is clearly established, the Court must ensure that [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates a right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523

(1987).  Thus, even though the law might be clearly established as a general principle, an officer may still assert qualified immunity if a reasonable officer under the same circumstances would not have known that his or her conduct was illegal.  *Anderson*, 107 S.Ct. at 3039.  Such immunity may be sustained even when officers act negligently or when the law governing their behavior in particular is unclear.  Qualified immunity now depends on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, and not upon malice or other subjective factors.  *Harlow,* 102 S.Ct. at 2739.

The United State Fifth Circuit Court of Appeals has articulated a bifurcated analysis to be employed in assessing a claim of qualified immunity.  *See Rankin v. Klevenhagen*, 5 F.3d 103, 108-109 (5th Cir. 1993)  First, it must be determined whether the plaintiff "allege[d] the violation of a clearly established constitutional right."  *Rankin*, 5 F.3d at 105; citing, *Siegert v. Gilly*, 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  The Fifth Circuit has identified three components of this first prong of the qualified immunity analysis.  *See, Chiu v. Plano Independent School District*, 260 F.3d 330, 343 (5th Cir. 2001).

> First, the plaintiff must allege the deprivation of a constitutional right.  Second, we must determine whether this right was clearly established at the time of the alleged violation.  Finally, we must determine whether the record at least gives rise to a genuine issue of material fact as to whether the defendants actually engaged in the conduct that violated this clearly established right. . . .
>
> "For a constitutional right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"

*Chiu*, 260 F.3d at 343 (internal citations and footnote omitted).

The *Chiu* decision further explained that

> The term "'clearly established' does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar or that holds that the very action in question is unlawful." . . .

11

> Instead, the right is clearly established if it is based on pre-existing law, and the unlawfulness of the conduct in question is apparent. . . . ("Put another way, officials must observe general, well-developed legal principles." . . .).  Furthermore, the applicable law must be clearly established at the time of the allegedly actionable conduct. . . .

*Id*, at note 7 (internal citations omitted).

If the violation of such a right has been alleged, the Court must next move to the second prong of the analysis and decide if the defendant's conduct was objectively reasonable, because "[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Rankin*, 5 F.3d at 105; quoting *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993); see also *Chiu*, 260 F.3d at 343.

"The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. To do so, the plaintiff must show that the defendant's conduct was not objectively reasonable and, further, that the defendant violated clearly established law." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994); *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).   A defendant's acts are objectively reasonable unless *all* reasonable officers in a defendant's circumstances would have known that his conduct violated the Constitution. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).

Defendants vehemently deny that any evidence was presented at trial to show they violated Plaintiff's constitutional rights under a theory of bystander liability (or any other theory) and, for that reason alone, the jury's verdict against Defendants with regard to Plaintiff's Section 1983 was improper and against the weight of the evidence.  Further, Plaintiff presented no evidence whatsoever to show Defendants violated a *clearly established* law or that their actions were not objectively reasonable.   As shown in Defendants' analysis of bystander liability, above, Defendants actions, *as seen in the video evidence introduced by Plaintiff,* do not give rise to an

appropriate finding of bystander liability resulting from excessive force.  The fact that Linder was in an adjoining room when Plaintiff was struck by Simmons was not objectively unreasonable, nor was the fact that Williams was merely present at the time Simmons suddenly and unexpectedly punched Plaintiff in the fact.  Defendants submit both that there is no evidence to support the jury's finding of bystander liability but, also, based upon the facts and evidence presented at trial, the jury improperly denied Defendants a finding of qualified immunity.

### iii.    **The jury improperly allocated a percentage of fault against Williams despite finding he had not violated Louisiana state law.**

Plaintiff also brought a claim against Linder and Williams arising under Louisiana state law for the intentional tort of battery.  With the exception of a vicarious liability claim against Sheriff Gary Gilley, this is the only state law claim brought by Plaintiff.  As noted by this Honorable Court in its *Judgment* of October 21, 2021, the jury found Williams did not commit the intentional tort of battery; however, despite that fact, the jury allocated 25% of fault against Williams.[4]  This finding is clearly erroneous.  This fact exhibits a lack of understanding by the jury as to the most basic of issues in this case.

When apportioning fault, the fact finder shall consider both the nature and conduct of each party *at fault* and the extent of the causal relationship between the conduct and the damages claimed.  *Gibson v. State Through Dept. of Transp. & Dev.*, 95-1418 (La.App. 1 Cir. 4/4/96)(emphasis added); 674 So.2d 995, 1005, *writs denied*, 96-1862, 96, 1895, 96-1902 (La. 10/25/96), 681 So.2d 373-74.  Considering the jury found Williams did not violate Louisiana state law, he simply cannot be apportioned any percentage of fault, much less 25%.

In response to this fact, Plaintiff will likely argue that any such finding is inconsequential, insofar as Sheriff Gary Gilley is responsible for satisfying any money judgment arising out of this

---

[4] R. Doc. 201, page 2.

matter due to Plaintiff's claim of vicarious liability.  However, judgment has not yet been satisfied and it is possible that Williams will be found responsible to satisfy 25% of the judgment rendered against Defendants.  At a minimum, the jury's finding exhibits the fact that it was confused regarding the concept of liability and/or comparative fault to such a degree that a new trial in this matter is warranted.

    c.   **Alternatively, remittitur is appropriate in this matter.**

In the event this Court does not grant Defendants' Motion for New Trial, remittitur is appropriate in this matter.  Federal Rule of Civil Procedure 59(e) gives a party the right to move for a reduction in an amount awarded by a jury and, consequently, a reduction in the overall amount reflected in the final judgment.  Remittitur is appropriate when the damages award is "excessive or so large as to appear contrary to right reason." *Laxton v. Gap, Inc.,* 333 F.3d 572, 586 (5th Cir. 2003).  Fifth Circuit precedent demonstrates that the court "will not disturb the jury's award unless it is entirely disproportionate to the injury sustained." *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1427 (5th Cir. 1992).  However, the Fifth Circuit will also not disturb a Court's decision on remittitur absent an abuse of discretion. *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364 (5th Cir. 2019).When evaluating whether a jury award is proper, a court should review awards "in cases with similar injuries in the relevant jurisdiction." *Vogler v. lackmore*, 352 F.3d 150, 156 (5th Cir. 2003).  The relevant jurisdiction in a state law claim is the state providing the substantive law for that claim. *Id.*

Defendants move for remittitur as to two of the three monetary awards rendered in this trial; namely, past physical and mental injuries for pain and suffering ($250,000.00) and future physical and mental injuries for pain and suffering ($50,000.00).[5]

---

[5] R. Doc. 191.

14

i.      **Past physical and mental injuries for pain and suffering**

In view of the evidence presented (both oral and physical), Defendants submit that the jury exceeded what is reasonable when it awarded Plaintiff $250,000.00 for past physical and mental injuries for pain and suffering ("past damages").  As this Court will recall, Defendants moved for dismissal of Plaintiff's claims of back injury via a Motion for Judgment as a Matter of Law, due to a complete lack of causal evidence between the alleged injury and Plaintiff's factual claims.[6] The Court granted Defendants' motion and instructed the jury that it was not to consider any claims for back injuries when rendering its verdict.[7]

However, when reviewing Plaintiff's award for past damages, it quickly becomes clear that they did not follow the Court's instruction and likely considered Plaintiff's back injury claim.  This suspicion is crystalized when one looks at a quantum study for similar facial injuries.  In the matter of *Talbot v. Louisiana Superdome Facility*, 1994 WL 881145 (La.Dist.Ct. 1994), the plaintiff suffered *multiple* facial fractures, including fractures of the right zygomatic complex when he was assaulted by two males.  After a modification by the court, Plaintiff was only awarded $75,000.00.

In the matter of *Gros v. Thobodaux*, 2007 WL 5433893 (La Dist.Ct. 2007), the plaintiff suffered multiple face fractures and nerve damage to his face and nose after he was beaten by a man without provocation.  Plaintiff underwent surgery because of the attack and had three titanium plates and three metal screws installed in his face.  *Id.*  Again, the plaintiff was awarded $75,000.00 in general damages pursuant to a Motion for J.N.O.V.  *Id.*

In the matter of *Constanten v. Day*, 1997 WL 831042 (La Dist.Ct. 1997), the plaintiff was punched in the face by the defendant, after which time the plaintiff suffered a fracture of the orbit of the right eye, a fractured nose, and a broken clavicle.  *Id.*  As a result, the plaintiff was awarded

---

[6] R. Doc. 183.
[7] R. Docs. 183 and 190, page 12.

$25,000.00 for pain and suffering.  Finally, in the matter of *Washington v. Gray*, 2011 WL 6002091 (4th JDC 2011), the plaintiff was struck in the face by another man, without provocation or warning, which resulted in the plaintiff suffering a broken jaw.  The aggressor was subsequently charged with second degree battery for the incident.  The plaintiff asserted a claim for the intentional tort of battery and, during the trial, the defendant asserted a claim of self-defense.  The jury sided with the plaintiff, and awarded him general damages in the amount of $35,000.00.

Admittedly, the cases cited to above are not recent; however, they still provide a proper benchmark for the purpose of what damages are appropriate in 2021.  And make no mistake: Defendants believe Plaintiff is entitled to restitution due to Simmons' inappropriate and criminal actions.  However, an award of $250,000.00 for past pain and suffering is completely excessive and inappropriate in this matter, especially when considering Plaintiff's medical records show his life has not been severely impacted by the incident.

As this Court will undoubtably recall, Plaintiff went through great pains to explain how his life has been torn asunder by Simmons' actions, and how he has not been able to perform any of the activities he performed prior to the date of incident.  However, it was shown via Plaintiff's cross-examination that, per his post-incident medical records, he has performed a myriad of physical activities, as shown below:

- 9/5/2019: "He has had to do a lot of manual work and wood splitting."

- 1/8/2020: "He states he had to lift a heavy object and it started to fall."

- 9/9/2020: "He has been cutting up trees from the hurricane and has had more back pain since that time."

- 12/31/20: "He has been running which may have aggravated his back pain."

- 2/1/2021: "Pt states his back pain has been worse since his last appt, he states he has been running and moving heavy objects."

16

- 3/2/2021: "He is having more back pain because he has been chopping wood.  He is still running although he says he is running easy…he is working with intense physical intensity for short periods of time which is adding to his pain."

- 3/24/21: "He has started to exercise regularly again running (sic)."

- 7/21/2021: "He worked in the yard yesterday and also put in an air conditioner by himself, which may have contributed to his pain."[8]

Despite having allegedly suffered extreme memory loss as a result of the subject incident, Plaintiff was curiously able to recall with almost perfect clarity how it was that his (own expert) doctor had misconstrued Plaintiff's words over a two-year period and was simply "wrong."  With that in mind, there are only two possibilities: 1) Plaintiff is correct, and his doctor misreported Plaintiff's representations every single time; or 2) Plaintiff was not forthcoming with the jury.  Considering the countless number of times Plaintiff was impeached while on the stand and the physical evidence submitted by Plaintiff, Defendants submit the latter option is the most plausible of the two.  This is most readily determined by the testimony of Plaintiff's neurologist, Dr. Veerapaneni, who, during her testimony, did not mention any treatment for facial injuries beyond early 2020.  Indeed, a review of Plaintiff's medical records from the University of Arkansas for Medical Sciences, which is where Plaintiff obtained treatment for his facial injuries, show Plaintiff received no further treatment and/or presented complaints for his facial injuries beyond early March of 2020.[9]  Considering these facts, Plaintiff's award of $250,000.00 for past physical pain and suffering is grossly excessive and should be reduced to the sum of $75,000.00, the high end of prior awards.

---

[8] While the above listed entries pertain to Plaintiff's complaints of back pain, they serve to show Plaintiff had resumed strenuous activities and, at a minimum, failed to mitigate any pain he may have experienced due to his activities.  Further, there is no mention of facial pain in the notes, which suggests Plaintiff made no complaints of facial pain.
[9] See Defendants' Trial Exhibit 13.

ii.    **Future physical and mental injuries for pain and suffering**

The jury awarded Plaintiff $50,000.00 for "future physical and mental injuries for pain and suffering." As this Court will recall, Plaintiff offered no medical testimony which addressed Plaintiff's mental health, and any discussion regarding potential future physical pain and/or treatment was incredibly limited. In support of Plaintiff's claims regarding his facial injury, Plaintiff offered up the June 12, 2020 testimony of Dr. Karthika Veerapaneni ("Veerapaneni"). After briefly discussing Plaintiff's facial surgery of 2017, Veerapaneni was asked about the possibility of future facial pain, specifically, Veerapaneni offered up the following testimony:

> "Regarding the severity [of pain], it can be a wide range. I mean, it can be mild, moderate, or severe, *depending upon, like, each individual.* So the severity rating is mild to severe. But in the majority of cases, the severity is intense."[10]
> …
> "Usually trigeminal neuralgia has a tendency to recur. Some patients can have, like for years and years and some patients can have recurrence for months to like, a few years, *and then the symptoms may resolve."[11]*

When asked to confirm how long Plaintiff could suffer symptoms,

Veerapaneni responded:

> "It is going to be difficult. We cannot. As of now, I mean, since 2017, he's having the symptoms. It's already three years, and he continues to have the symptoms. I cannot say how long the symptoms are going to last on him."[12]

While Plaintiff did report having ongoing issues of facial pain to Veerapaneni, he told a different story while under the pressure of a deposition. When asked about his jaw during his 2021 deposition, Plaintiff stated it "just—healed on its own."[13] Plaintiff further testified during trial and

---

[10] *Id.*, page 17, lines 18-23.
[11] *Id.*, page 21, lines 18-22.
[12] *Id.*, page 22, lines 5-9.
[13] Defendants' Trial Exhibit 19, line 17.

his deposition that he has returned to playing music.  Simply stated, Plaintiff provided no evidence whatsoever during the trial to show that *he, Brian Patrick Hargiss,* will having ongoing issues with facial pain.

The evidence Plaintiff provided with regard to future mental pain and suffering is even more deficient than the inadequate evidence presented on the future physical pain and suffering claim, in that Plaintiff provided no evidence to support his claim whatsoever.  Per the Fifth Circuit, "[a] plaintiff must present evidence of an emotional injury's character and severity to recover greater than nominal damages."  *Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002); citing *Carey v. Phillips*, 435 U.S. 247, 264 n. 20, 98 S.Ct.  1042, 55 L.Ed.2d 252 (1978)(stating that "an award of damages must be supported by competent evidence"); *Gilles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001)(same); *Brady v. Fort Bend County*, 145 F.3d. 691, 719 (5th Cir. 1998)(noting the importance of detailed, nonconclusional statements).  The courts have necessitated two elements for a plaintiff to recover emotional distress damages: 1) the plaintiff must provide specific evidence of the nature and extent of the harm; and 2) he must make more than vague allegations to support his claim.  *Gilles,* 245 F.3d at 488.  "*We prefer corroboration and expert testimony*."  *Thomas,* 297 F.3d at 368, citing *Gilles, supra.*(emphasis added).

Here, Plaintiff has provided no testimony whatsoever, expert or otherwise, to support his claim that he will have future mental or emotional pain as a result of the subject incident, and failed to meet the standard explained to this jury by the Court in the jury instructions.  The jury was plainly told that "[d]amages for emotional distress must be based on the evidence at trial.  *They may not be based on __speculation__ or sympathy.*" (emphasis added)[14] As such, any amount awarded

---

[14] R. Doc. 190, page 12.

to Plaintiff for future mental and emotional pain and suffering is based upon no competent evidence whatsoever, and should be reduced to a nominal amount, per the standards set forth by the Fifth Circuit.

### iii.   The jury's punitive damage award is excessive.

The punitive damages awarded to Plaintiff were the byproduct of Plaintiff's bystander liability claim which, as explained by Defendants above, was wrongly decided by the jury. Regardless, even if Plaintiff's bystander liability claim had merit (which Defendants deny), the amount of punitive damages levied against Defendants herein is excessive under the circumstances.  As the Court rightly explained to the jury, "[p]unitive damages are a harsh remedy, not favored by law" and should be awarded "only if Defendants' misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."[15]   The United States Supreme Court has held that punitive damages should be awarded only when the conduct reviewed "is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).  Despite these clear instructions and the very high standard which must be met, the jury awarded Plaintiff punitive damages in the amount of one hundred thousand dollars ($100,000.00).  While fifty thousand ($50,000.00) of that amount was assigned to defendant Travis Simmons, Linder and Williams were assigned twenty-five thousand dollars ($25,000.00) each, despite there being no reliable evidence whatsoever that Defendants could even be found liable under a theory of bystander liability.  However, even if this Court were to find evidentiary support in the trial record for a failure to intervene, the punitive damages awards levied

---

[15] *Id.*, pages 13-14.

against them are not supported by the evidence presented and are excessive, as shown by relevant case law, below:

In the matter of *Lewis v. Goodie*, 798 F.Supp. 382 (W.D. La. 1992), the plaintiff brought suit against Breaux Bridge Police Officers Melvin Goodie and Anthony DeRousselle, Breaux Bridge Chief of Police, George Menard, and the City of Breaux Bridge pursuant to claims of unlawful arrest, use of excessive force, failure to intervene, failure to provide medical care, and certain Monell claims. For the purpose of brevity an explanation of the case's facts will be truncated to only those which are relevant to this motion. In *Lewis*, the plaintiff was placed under arrest by the subject officers but was not provided a reason for said arrest. *Id*. at 385. Officer Goodie escorted the plaintiff to the right back seat of his unit. *Id.* While the plaintiff was entering the vehicle, Officer Goodie intentionally slammed the car door on the plaintiff's lower right leg. *Id.* at 385-86.

During the ride to the police station, the plaintiff and Officer Goodie exchanged hostile words, likely provoked by Officer Goodie's having slammed the car door upon the plaintiff's leg. *Id.* at 386. When the plaintiff exited the unit, he lunged towards Officer Goodie, who responded by punching the plaintiff in the face numerous times with his right fist. *Id.* The court took note of the fact that Officer Goodie was 6'4" and 230 pounds, as compared to the plaintiff's build of 5'8" and 140 pounds. *Id*. During the beating, the plaintiff's head hit and dented the patrol vehicle. *Id.* Officer Goodie continued to beat the plaintiff, even as the plaintiff was falling to the ground. *Id*. Officer DeRousselle did not see the parking lot incident commence, but he did eventually intervene to stop the beating from continuing. *Id*. The plaintiff was then carried into the police station by the Officers. *Id.* Upon entry, the plaintiff became verbally abusive once again. *Id*. Instead of handcuffing the plaintiff, Officer Goodie proceeded to beat him again. *Id.* Officer DeRousselle

did not intervene to stop the continuous beating from occurring.  *Id.*  The beating resulted in the plaintiff sustaining numerous injuries across his body, to include a lumbar sprain, a cervical sprain, and blurred vision.  *Id*.  Moreover, a ring that was worn by Officer Goodie caused scarring on the plaintiff's left cheek.  *Id.*  Upon consideration of all of the facts listed above, the judge only cast Officer Goodie in judgment for five thousand dollars ($5,000.00) in punitive damages, despite the vicious beating he inflicted upon the plaintiff.[16]  *Id.* at 391.

In the matter of *Cargo v. Dotson*, 2014 WL 1095219 (N.D.Ill. 2014), a woman who reportedly suffered a fracture to her left foot during a police raid, sued Chicago Police Officers Larry Dotson and Jean Parker.  The officers entered the plaintiff's apartment to arrest her son.  The officers spoke to the son, who allegedly left the presence of the officers and went back into the plaintiff's apartment.  Officer Dotson proceeded to forcefully push open the door, causing it to break the plaintiff's foot.  The plaintiff contended, among other things, that Officer Parker failed to intervene in the use of excessive force.  The jury agreed, and awarded Plaintiff six thousand, five hundred dollars ($6,500) in punitive damages as a result of Officer Parker's inaction, and only eight thousand, nine hundred dollars ($8,900) in punitive damages for Officer Dotson's use of force.

In the matter of *Pierce v. Taqi*, 2017 WL 4049788 (E.D. NY 2017) the plaintiff was accused of trying to shoplift by a store clerk, which prompted the plaintiff to leave the store.  Soon after, the plaintiff was approached by an officer, which prompted the plaintiff to panic and run.  The plaintiff was chased and struck by a police unit, and then repeatedly struck by two of the officers at separate intervals.  Plaintiff brought both excessive force claims and failure to intervene claims against both of the officers due to both: 1) their individual use of force; and 2) each officer's failure

---

[16] Officer DeRousselle's failure to intervene did not rise to the level of punitive damages, as he was considered untrained at the time of the event.  *Lewis* at 391.

to intervene while the other used force.  Each officer was cast in judgment in the amount of six thousand dollars ($6,000.00) in punitive damages.

Finally, in the matter of *Capps v. Drake*, 2016 WL 2627441 (S.D.Ill. 2016), the plaintiff reportedly suffered post-traumatic stress disorder and resulting from violation of his civil rights when Officers Drake, Freeman, Trogolo, and Isaacs, in addition to Deputies Roye and Shaffer used excessive force against him during a traffic stop.  Much like the plaintiff in *Pierce*, *supra.*, the plaintiff further argued that the law enforcement officials who were not using excessive force at a particular time did not intervene to stop the fellow officer who was exerting force at any given moment.  The facts are as follows: Officer Trogolo initiated a traffic stop of the plaintiff's vehicle in the parking lot of a Day's Inn hotel.  Officer Drake allegedly administered field sobriety tests and ultimately initiated the plaintiff's arrest.  The plaintiff refused a breathalyzer test and Officer Trogolo allegedly tased the plaintiff.  The plaintiff further claimed Officer Trogolo kneeled on top of him and kicked him in the head.  Deputy Roye then tased the plaintiff again, and Deputy Shaffer tased the plaintiff in the ribs.

Jurors found against Officer Trogolo and Deputy Roye with regard to the plaintiff's excessive force claim, and against all defendants for a failure to intervene.  Jurors awarded the plaintiff twenty-three dollars ($23.00) each from Officers Drake, Freeman, and Issacs in punitive damages and five thousand dollars ($5,000.00) each from Officer Trogolo and Deputy Roye for punitive damages.

The quantum materials listed above unequivocally show that the punitive awards levied against Linder and Williams are *grossly* excessive, when considering that Plaintiff was struck a single time *in a split second* by Simmons.  Defendants aver that any punitive damages levied against Linder and/or Williams are inappropriate and unwarranted under the facts in this case;

however, if the Court finds it necessary to maintain a punitive damage award against Defendants herein, we submit that the award should be greatly reduced, when considering the quantum materials referenced.

### III.  CONCLUSION

Considering what is contained above, it is clear a new trial is warranted in this matter. When considering the evidence presented during trial, the jurors clearly either misapplied or misunderstood the law of bystander liability to such a degree that their verdict was not a sound one, and was contrary to the law and evidence presented.  Linder was not in the room when Simmons', acting on his own accord, made the decision to strike Plaintiff on the face.  The Fifth Circuit has repeatedly held that a necessary component of bystander liability is the actual *presence* of a person who could intervene in the offending act.  For this reason alone, any finding of bystander liability against Linder is inappropriate.

Williams was also inappropriately found liable under a theory of bystander liability.  A review of the video which shows Simmons suddenly strike Plaintiff and a review of Williams' trial testimony can only result in the following conclusions: Williams did not know Simmons was going to strike Plaintiff before the act occurred and, further, Williams did not have an opportunity to intervene given: 1) the speed with which the strike occurred; and 2) the fact that there was only one punch thrown.  The necessary standard for bystander liability in conjunction with use of excessive force was not met at trial, and the jury improperly found Linder and Williams liable under 42 U.S.C. § 1983 and, additionally, denied an appropriate finding of qualified immunity. Further, the jury incorrectly allocated fault against Williams for the Louisiana state law tort of battery despite having found Williams did not actually *commit* said tort.  Considering the jury's

24

verdict was contrary to the law and evidence presented in multiple ways, a new trial is warranted in this matter.

Should this Honorable Court disagree with the premise that a new trial is necessary, Defendants submit that the damages awarded to Plaintiff by the jury should be reduced through remittitur, insofar as the amounts awarded are grossly disproportionate to Plaintiff's injuries and improper per the standards which pertain to punitive damages.  These facts are represented through the myriad of quantum materials referenced herein which Defendants submit the Court should give great consideration to in the interest of justice.

For all of the reasons listed above, Defendants submit that a new trial is warranted in this matter and, if and only if that request is denied by this Honorable Court, a reduction in the damages awarded to Plaintiff by the jury is both appropriate and necessary.

Respectfully submitted,

FROSCH RODRIGUE ARCURI, LLC

*/s/ Jason P. Wixom*
Blake J. Arcuri (LSBN 32322)
Laura C. Rodrigue (LSBN 30428)
Jason P. Wixom (LSBN 32273)
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
(504) 592-4600 / Fax (504) 592-4641
E-Mail: barcuri@fralawfirm.com
           lrodrigue@fralawfirm.com
           jwixom@fralawfirm.com

## CERTIFICATE OF SERVICE

I certify that on the 10th day of November, 2021, I have filed this pleading with the CM/ECF system and have served any non-participants by U.S. Mail.

*/s/ Jason P. Wixom*